IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JAMES L. DEAN, | ) | 4:09CV3144 |
| | ) | |
| Plaintiff, | ) | **MEMORANDUM** |
| v. | ) | **AND ORDER** |
| | ) | |
| RICHARD T. SMITH, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## I. BACKGROUND

In 1989, the plaintiff, James L. Dean, pleaded guilty to aiding and abetting second degree murder in connection with the 1985 death of Helen Wilson in Beatrice, Nebraska.   One of his five criminal co-defendants, Joseph E. White, was tried and convicted of first degree murder.  White's conviction was overturned in 2008 after DNA testing conclusively showed that blood and semen found at the crime scene belonged to Bruce Allen Smith, who had no association with White, Dean, or the other four persons who stood convicted for the Wilson homicide.  Dean was granted a full pardon by the Nebraska Board of Pardons on January 26, 2009.[1]

Dean filed this civil rights action on July 14, 2009.[2]  Named as defendants are: (1) Richard T. Smith, the county attorney for Gage County, Nebraska; (2) Burdette

_____

[1] In Nebraska, the power to grant pardons is vested in the Governor, Attorney General, and Secretary of State sitting as a board.  *See* Nebr. Const., art. IV, § 13.

[2] Four of Dean's criminal co-defendants have also filed civil rights actions.  *See* Case Nos. 4:09CV3145 (Joseph E. White, plaintiff), 4:09CV3146 (Kathleen A. Gonzalez, plaintiff), 4:09CV3147 (Thomas W. Winslow, plaintiff), and 4:09CV3148 (Ada Joann Taylor, plaintiff).  A fifth criminal co-defendant, Debra Brown Shelden (also spelled "Sheldon" in the complaint herein), has not filed an action in this court.

Searcey, a Gage County deputy sheriff; (3) Gerald Lamkin, a Gage County deputy sheriff; (4) Kent Harlan, a Gage County deputy sheriff; (5) Mark Meints, a Gage County deputy sheriff; (6) Wayne R. Price, Ph.D., a Gage County deputy sheriff and licensed psychologist; (7) Jerry O. DeWitt, the sheriff of Gage County; (8) the Gage County Sheriff's Office; (9) the Gage County Attorney's Office; and (10) the County of Gage, Nebraska. All individual defendants are sued both in their personal and their official capacities.

Dean alleges that the defendants, "individually and acting in concert, deliberately and with reckless disregard of the truth, solicited, fabricated, manufactured and coerced evidence they knew, or reasonably should have known, was false, fraudulent, and profoundly lacking in reliability." (Filing 1, ¶ 7.) The defendants allegedly "filed false affidavits with the courts; prepared false investigative reports; repeatedly lied about the evidence during the course of all interrogations; mentally coerced Plaintiff to gain false evidence; and threatened Plaintiff with life imprisonment or execution in the electric chair if he did not cooperate and recite Defendants' false narrative of Wilson's homicide." (*Id.*, ¶ 8.)

It is claimed that the defendants' actions "constitute unreasonable seizure of Plaintiff in violation of the Fourth and Fourteenth Amendments to the Federal Constitution[;] . . . deprived Plaintiff of his liberty without due process of law in violation of the Fifth and Fourteenth Amendments to the Federal Constitution[;] . . . deprived Plaintiff of his right to a speedy public trial by an impartial jury in violation of the Sixth and Fourteenth Amendments to the Federal Constitution [and ;] . . . constitute deliberate infliction of cruel and unusual punishment upon Plaintiff regarding his incarceration . . . for a crime he did not commit, in violation of the Eighth and Fourteenth Amendments to the Federal Constitution." (*Id.*, ¶ 11.) The complaint also contains a conspiracy count and a claim that the County, the County Sheriff's Office, and the County Attorney's Office had in effect certain policies, practices, and customs that resulted in the alleged constitutional violations.

The defendants have moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6).  The defendants contend that:

1.    The case is barred by the applicable statute of limitations and must be dismissed;

2.    The plaintiff cannot recover against defendants Gage County or the individual Defendants in their official capacities under 42 U.S.C. § 1983 using a theory of respondeat superior;

3.    Defendants Gage County Sheriff's Office and Gage County Attorney's Office are not suable entities under Nebraska law;

4.    Defendant Smith is entitled to absolute prosecutorial immunity;

5.    The complaint fails to state a cause of action against Defendant DeWitt;

6.    Malicious prosecution is not an action that can be brought pursuant to 42 U.S.C. § 1983;

7.    Plaintiff's complaint fails to state a cause of action against the individual defendants; and

8.    This court lacks pendant [sic] jurisdiction over any state law tort claims.

(Filing 21.)

## II. DISCUSSION

For the reasons discussed below, the motion to dismiss will be granted in part and denied in part.  The Fourth Amendment claim  will be dismissed as untimely; the Fifth Amendment claim also will be dismissed as untimely to the extent that the plaintiff alleges his confession  was coerced, but otherwise the claim will be allowed to proceed; the Gage County Sheriff's Office and Gage County Attorney's Office will

be dismissed as parties; and, finally, any state law claims for false arrest or false imprisonment, malicious prosecution, or other torts will be dismissed without prejudice. In all other respects, the defendants' motion to dismiss will be denied.

## A.  Statute of Limitations

In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." *Id.*, at 486-87 (footnote omitted).[3] The Eighth Circuit has held that an executive pardon which is based on a finding of innocence satisfies the *Heck* criteria. *See Wilson v. Lawrence County, Mo.*, 154 F.3d 757, 760-61 (8th Cir. 1998).

To the extent that any claims made in the present action rest on the invalidity of the plaintiff's conviction or sentence, the statute of limitations did not begin to run until the plaintiff was pardoned on January 26, 2009, which was less than six months before this § 1983 action was filed. *See Heck*, 512 U.S. at 490 ("Just as a cause of action for malicious prosecution does not accrue until the criminal proceedings have terminated in the plaintiff's favor, . . . a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated."); *Wallace v. Kato*, 549 U.S.

---

[3] The Supreme Court analogized the prisoner's § 1983 claim to a common-law cause of action for malicious prosecution, which, "unlike the related cause of action for false arrest or imprisonment, . . . permits damages for confinement imposed pursuant to legal process." *Heck*, 512 U.S. at 484. "One element that must be alleged and proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused." *Id.*

384, 393 (2007) ("[T]he *Heck* rule for deferred accrual . . . delays what would otherwise be the accrual date of a tort action until the setting aside of an extant conviction which success in that tort action would impugn.") (emphasis omitted).

The applicable limitations period is four years. *See Poor Bear v. Nesbitt*, 300 F.Supp.2d 904, 912-13 (D.Neb. 2004); Neb. Rev. Stat. § 25-207. The statute of limitations is not tolled during a term of imprisonment absent "a showing of a recognizable legal disability, separate from the mere fact of imprisonment, which prevents a person from protecting his or her rights[.]" *Gordon v. Connell*, 545 N.W.2d 722, 726 (Neb. 1996).[4]

The defendants attempt to compare the present action to *Wallace*, in which the Supreme Court held that an action for unlawful arrest accrued when the plaintiff was bound over for trial, not eight years later when he was released from custody after the charges against him were dropped following a successful appeal. The defendants suggest that "Plaintiff has basically alleged false arrest and false imprisonment in his Complaint." (Filing 22, p. 7.) Dean disputes this characterization of his action and states that he instead is claiming "malicious prosecution, wrongful conviction, and subsequent wrongful imprisonment." (Filing 28, p. 4.) In his complaint, however, Dean alleges that he was "*unconstitutionally arrested*, maliciously prosecuted, and wrongfully convicted and imprisoned . . .." (Filing 1, p. 2 (emphasis supplied).).

Dean claims there was an unreasonable seizure of his person in violation of the Fourth and Fourteenth Amendments. More particularly, Dean alleges in his complaint that Deputy Searcey, after joining the Gage County Sheriff's Office in January 1987, "began to re-interview witnesses, which led him and [County Attorney]

---

[4] "Section 1983 claims are governed by the personal injury statute of limitations of the state where the claim arose." *Bridgeman v. Nebraska State Pen*, 849 F.2d 1076, 1077 (8th Cir. 1988) (per curiam). "The use of a state's statute of limitations also requires the use of its tolling statutes and the operation thereof is governed by state law." *Id.*, at 1078.

Smith to arrest Plaintiff and alleged 'accomplices' based on information and suppositions they knew, or should have known, to be false." (*Id.*, p. 6, ¶ 3h.) "On April 14, 1985 [sic], an arrest warrant was issued for Plaintiff on the basis of an affidavit by Defendant Searcey, which relied on the changed statement made by Debra Brown Sheldon[.]" (*Id.*, p. 8, ¶ 4j.) "To bring about Plaintiff's wrongful conviction, Defendants solicited, fabricated, manufactured, and coerced evidence that was demonstrably unreliable, misleading, false, and failed to comport with the known immutable evidence of Wilson's homicide, for purposes of . . . [p]roviding untrue probable cause for Plaintiff's arrest and confinement [and] . . . [o]btaining orders preventing Plaintiff securing release on bond[.]" (*Id.*, p. 13, ¶ 9a,b.)

Even assuming that a Fourth Amendment violation has been sufficiently pleaded in the complaint, such a claim does not require any showing that Dean's subsequent conviction was invalid. In other words, the claim could have been brought at any time. *See Moore v. Sims*, 200 F.3d 1170, 1171-72 (8th Cir. 2000) (per curiam) (inmate's claim that he was unlawfully seized was not barred by *Heck* rule since proof that inmate's initial seizure and detention by officers was without probable cause would not necessarily imply the invalidity of his drug-possession conviction). The Fourth Amendment claim therefore is barred by the statute of limitations. *See Varner v. Peterson Farms*, 371 F.3d 1011, 1016 (8th Cir. 2004) (statute of limitations defense may properly be asserted through Rule 12(b)(6) motion to dismiss where it appears from face of complaint that limitation period has run).

Dean next claims that he was deprived of his liberty without due process of law in violation of the Fifth and Fourteenth Amendments. He alleges that "[o]n May 2, 1989, [County Attorney] Smith and [Sheriff] DeWitt arranged for Plaintiff to meet with Price, who was a psychologist employed as a Deputy Sheriff by GCSO. Price interviewed Plaintiff, pretending to be Plaintiff's 'therapist.' Price told Plaintiff his polygraph results revealed, at a subconscious level, his involvement in Wilson's homicide; counseled him that he was traumatized by the violence he witnessed to Wilson; and told Plaintiff he was 'repressing' his memories of the murder. . . . As a

6

result of Price's 'counsel', Plaintiff told Smith, DeWitt, Harlan, Searcey, Meints, and Lamkin that he 'remembered' pieces of the Wilson homicide, mostly in dreams." (Filing 1, p. 9, ¶ 4l.)  "Price, Searcey, and/or other defendants informed Plaintiff that if he did not cooperate and plead guilty to a lesser offense than first degree murder, he would be prosecuted for first degree murder and could be sentenced to execution." (*Id.*)  "On June 5,1989, plaintiff pled to a reduced charge of aiding and abetting second degree murder in the District Court of Gage County, Nebraska, despite the fact he did not remember and had no knowledge of the crime."  (*Id.*, p.10, ¶ 4r.)  "From June through October 1989, Defendants continued to suggest new evidence for Plaintiff to 'remember' that supported the 'accomplices'' false narrative of Wilson's homicide.  Plaintiff testified at the trial of White during November 1989. His testimony was false and only done under threat by defendants of a possible execution."  (*Id.*, ¶ 4s.)  "To bring about Plaintiff's wrongful conviction, Defendants solicited, fabricated, manufactured, and coerced evidence that was demonstrably unreliable, misleading, false, and failed to comport with the known immutable evidence of Wilson's homicide, for purposes of . . . [c]orrupting the judicial system so that Plaintiff could not possibly receive a fair trial . . . and . . . [c]oercing Plaintiff to plead guilty to a crime he did not commit."  (*Id.*, pp. 13-14, ¶ 9c,d.)  "Defendants did not attempt to determine the truth in their investigation of Wilson's rape and murder.  Their investigation of Wilson's murder was intended to prove a case against Plaintiff despite his actual innocence, which was known or should have been known in the absence of Defendants' deliberate indifference to Plaintiff's constitutional rights."  (*Id.*, p. 14, ¶ 10.)

Insofar as Dean claims that his inculpatory statement was coerced, the *Heck* rule again has no application.  *See Simmons v. O'Brien*, 77 F.3d 1093, 1095 (8th Cir. 1996) (§ 1983 claim challenging voluntariness of confession, if successful, would not necessarily imply that the plaintiff's conviction was unlawful).

Dean's claim that his guilty plea was not knowing and voluntary is a different matter.  "A plea of guilty is more than a confession which admits that the accused did

various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment." *Boykin v. Alabama*, 395 U.S. 238, 242 (1969). Under *Heck*, this aspect of the Fifth Amendment claim could not have been maintained prior to Dean receiving his pardon. *See, e.g., Bills v. Adair*, No. 08-12207, 2009 WL 440642, at *10 (E.D.Mich. Feb. 23, 2009) (inmate could not bring § 1983 action claiming that defendants forced him to plead no contest to charges for which he was convicted); *Smith v. Hayden*, No. 5:05-cv-00884, 2009 WL 1299033, at *6-7 (S.D.W.Va. Feb. 3, 2009) (inmate's *Bivens* claim that he was "railroaded" into involuntary plea not cognizable pursuant to *Heck*), *report and recommendation adopted*, 2009 WL 1287033 (S.D.W.Va. May 8, 2009). *Cf. Jean-Laurent v. Hennessy*, No. 05-CV-1155, 2008 WL 3049875, at *8 (E.D.N.Y. Aug. 1, 2008) ("[T]o determine whether plaintiff's guilty plea was entered involuntarily as a result of ineffective assistance of trial counsel would squarely violate the rule in *Heck*, as such an inquiry would necessarily require this Court to call plaintiff's conviction into question.").

Similarly, Dean's claim that the defendants manufactured evidence and otherwise tainted the criminal proceedings would necessarily call into question the validity of his conviction. *See Heck*, 512 U.S. at 479 (prosecutors and police allegedly engaged in "unlawful, unreasonable, and arbitrary investigation" leading to petitioner's arrest" and "knowingly destroyed" evidence "which was exculpatory in nature and could have proved [petitioner's] innocence"); *Moore v. Sims*, 200 F.3d at 1172 (inmate's § 1983 claim that evidence was unlawfully "planted" was *Heck*-barred and therefore properly dismissed); *Moore v. Novak*, 146 F.3d 531, 535-36 (8th Cir.1998) (plaintiff convicted of assaulting officer was *Heck*-barred from bringing § 1983 claim that officer destroyed or secreted videotape of incident). In summary, the Fifth Amendment claim is not time-barred except to the extent Dean alleges that he was tricked or coerced into providing self-incriminatory statements (apart from pleading guilty).

Third, Dean claims that he was deprived of his right to "a speedy public trial by an impartial jury" in violation of the Sixth and Fourteenth Amendments. Because

Dean waived these rights by pleading guilty, *see Cox v. Lockhart*, 970 F.2d 448, 453 (8th Cir.1992) (defendant's guilty plea, knowingly and voluntarily entered, waived right to speedy trial), this claim apparently mirrors the Fifth Amendment claim that Dean's plea was involuntary.  As discussed above, such claim is not barred by the statute of limitations.  Since the defendants have not raised the issue in their motion to dismiss, I make no determination as to whether a Sixth Amendment claim is sufficiently alleged in the complaint.

Fourth, and finally, Dean claims that the defendants violated the Eighth and Fourteenth Amendments.  Assuming, once again, that the allegations of the complaint are sufficient to state a claim, it is not apparent that the claim is time-barred.

## B.  *Respondeat Superior*

The defendants next state in their motion to dismiss that "[t]he plaintiff cannot recover against defendants Gage County or the individual Defendants in their official capacities[5] under 42 U.S.C. § 1983 using a theory of respondeat superior[.]"  (Filing 21, ¶ 2.)  Dean readily acknowledges this well-established rule of law, but contends that his complaint "states sufficient facts alleging constitutional injury resulting from an official municipal policy or a widespread custom or practice of Gage County instituted by its employees, Defendants, in their official and individual capacities." (Filing 28, p. 7.)  *See Springdale Educ. Ass'n v. Springdale School Dist.*, 133 F.3d 649, 651 (8th Cir. 1998) (local government cannot be held liable under § 1983 for injury inflicted solely by its employees or agents on theory of respondeat superior; rather, plaintiff seeking to impose such liability is required to identify either official

---

[5] The official-capacity claims against the county attorney, sheriff, and deputies are redundant of the claims against the county.  *See Roberts v. Dillon*, 15 F.3d 113, 115 (8th Cir.1994).

municipal policy or widespread custom or practice that caused plaintiff's injury).[6]

In particular, Dean alleges that these policies, customs, and practices of Gage County included:

a.  failing to properly train and supervise officers in the techniques of investigating serious crimes;

b.  using interrogation techniques that had an extreme likelihood of obtaining false and unreliable information from suspects and witnesses;

c.  failing to discipline officers who violate the Constitution or law or otherwise violate the rights of criminal suspects during the course of a criminal investigation;

d.  investigating crimes in a manner designed to prove a case against a convenient suspect by procuring unreliable evidence;

---

[6] There is "an important distinction between claims based on official policies and claims based on customs. Because an official policy speaks for itself about the intent of public officials, proof of a single act by a policymaker may be sufficient to support liability." *Jenkins v. County of Hennepin*, 557 F.3d 628, 633 (8th Cir. 2009) (citing *McGautha v. Jackson County*, 36 F.3d 53, 56 (8th Cir.1994)). "To establish the existence of a policy, [a plaintiff] must point to 'a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters.'" *Id.* (quoting *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir.1999)). A plaintiff "must also show that the policy was unconstitutional and that it was 'the moving force' behind the harm that he suffered." *Id.* "In contrast to the evidence required to establish an official policy, [the Eighth Circuit has] emphasized that a custom can be shown only by adducing evidence of a 'continuing, widespread, persistent pattern of unconstitutional misconduct.'" *Id.*, at 634 (quoting *Mettler*, 165 F.3d at 1204)). "A plaintiff must also show either that policymakers were deliberately indifferent to the misconduct or that they tacitly authorized it. From this standard it follows that '[l]iability for an unconstitutional custom . . . cannot arise from a single act.'" *Id.* (citation omitted; quoting *McGautha*, 36 F.3d at 57)).

e. falsifying and fabricating evidence without regard to whether policies, practices, and customs might result in the conviction of persons who are actually innocent; and

f. deliberate indifference to the violation of the rights of a suspect by an officer or employee.

(Filing 1, pp. 16-17, ¶ 19.)

The Supreme Court invalidated heightened pleading requirements in § 1983 suits against municipalities in *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 168 (1993). A plaintiff is not required to plead the specific existence of an unconstitutional policy or custom. "When a complaint is filed, a plaintiff may not be privy to the facts necessary to accurately describe or identify any policies or customs which may have caused the deprivation of a constitutional right. Moreover, such a holding would disregard the liberality of Fed.R.Civ.P. 8(a)(2) which requires merely 'a short and plain statement of the claim showing that the pleader is entitled to relief,' and 8(f), which states 'pleadings shall be so construed as to do substantial justice.' . . . At a minimum, a complaint must allege facts which would support the existence of an unconstitutional policy or custom." *Doe ex rel. Doe v. School Dist. of City of Norfolk,* 340 F.3d 605, 614 (8th Cir. 2003). Judging the complaint by this standard, Dean has sufficiently alleged the existence of an unconstitutional policy or custom of Gage County.[7]

---

[7] When confronted with a Rule 12(b)(6) motion, all the factual allegations contained in the complaint are accepted as true, and the complaint is reviewed to determine whether its allegations show that the pleader is entitled to relief. *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1964-65 (2007). If the complaint does not state "enough facts to state a claim to relief that is plausible on its face," it must be dismissed for failure to state a claim. *Id.* at 1974. The complaint must state enough facts to "nudge [the] claims across the line from conceivable to plausible. . .." *Id.* "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id.* at 1965 (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)).

### C.  Sheriff's Office and County Attorney's Office

Whether a party, other than an individual or a corporation, has the capacity to be sued is determined "by the law of the state where the court is located[.]" Fed.R.Civ.P. 17(b).  Each county in Nebraska may sue and be sued in its own name, Neb.Rev.Stat. § 23-101, but the same is not true of county offices or departments.  *See Griggs v. Douglas County Corrections Center*, Case No. 8:07CV404, 2008 WL 1944557, at *1 (D.Neb. Apr. 29, 2008) (county corrections department); *Holmstedt v. York County Jail Supervisor (Name Unknown),* 739 N.W.2d 449, 461 (Neb.App. 2007) (county sheriff's department), *rev'd on other grounds*, 745 N.W.2d 317 (Neb. 2008); *Jameson v. Plischke*, 165 N.W.2d 373, 376 (Neb.1969) (county board of supervisors).  *See also Meyer v. Lincoln Police Dept.*, 347 F.Supp.2d 706 (D.Neb. 2004) (municipal police department).  Thus, the Gage County Sheriff's Office and Gage County Attorney's Office will be dismissed as parties.

### D.  County Attorney Smith

Prosecutors are absolutely immune from liability in suits under § 1983 for activities that are "intimately associated with the judicial phase of the criminal process[.]" *Imbler v. Pachtman*, 424 U.S. 409, 428 (1976).  However, "that absolute immunity may not apply when a prosecutor is not acting as 'an officer of the court,' but is instead engaged in other tasks, say, investigative or administrative tasks." *Van de Kamp v. Goldstein*, 129 S.Ct. 855, 861 (2009).  A "functional approach" is used to decide whether absolute immunity attaches to a particular kind of prosecutorial activity.  *Id.* (citing *Burns v. Reed*, 500 U.S. 478, 486 (1991)).

For example, in the years since *Imbler*, the Supreme Court has held "that absolute immunity applies when a prosecutor prepares to initiate a judicial proceeding, or appears in court to present evidence in support of a search warrant application." *Id.* (citations omitted).  On the other hand, the Court has held "that absolute immunity does not apply when a prosecutor gives advice to police during a

12

criminal investigation, when the prosecutor makes statements to the press, or when a prosecutor acts as a complaining witness in support of a warrant application." *Id.* (citations omitted).

"Before the establishment of probable cause to arrest, a prosecutor generally will not be entitled to absolute immunity." *McGhee v. Pottawattamie County*, 547 F.3d 922, 929 (8th Cir. 2008) (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 274 (1993)), *cert. granted*, 129 S.Ct. 2002 (Apr. 20, 2009) (No. 08-1065). The Eighth Circuit has also found that "immunity does not extend to the actions of a County Attorney who violates a person's substantive due process rights by obtaining, manufacturing, coercing and fabricating evidence before filing formal charges, because this is not 'a distinctly prosecutorial function.'" *Id., at 933*.

Factual allegations specifically concerning County Attorney Smith, as set forth in the preliminary section of the complaint (captioned "facts applying to all counts"), include the following: "Defendant Richard T. Smith at all times was the County Attorney of Gage County, Nebraska and actively participated [in] and directed the investigation of the homicide of Helen Wilson." (Filing 1, p. 3, ¶ 1i.) Smith and the GCAO [Gage County Attorney's Office] worked closely with both the BPD [Beatrice Police Department] and the GCSO [Gage County Sheriff's Office] during the murder's initial investigatory phase." (*Id.*, p. 5, ¶ 3c.) "Under Smith's direct supervision, the BPD, the GCSO, and the NSP [Nebraska State Patrol] interviewed anyone who was known to law enforcement or was the subject of rumors circulating around Beatrice regarding the murder. Plaintiff was not interviewed at this time." (*Id.*, p. 5, ¶ 3f.) "[After joining the GCSO in January 1987, Deputy] Searcey . . . began to re-interview witnesses, which led him and Smith to arrest Plaintiff and alleged 'accomplices' based on information and suppositions they knew, or should have known, to be false. (*Id.*, p. 6, ¶ 3h.) "On April 16, 1989, in an unrecorded interview taken by Searcey at Smith's direction, Plaintiff denied all involvement with Wilson's murder." (*Id.*, p. 8, ¶ 4l.) "On April 29, 1989 Smith requested, and Plaintiff agreed to submit to a polygraph examination." (*Id.*, p. 8, ¶ 4m.) "On May 2,

13

1989, Smith and DeWitt arranged for Plaintiff to meet with Price, who was a psychologist employed as a Deputy Sheriff by GCSO." (*Id.*, p. 8, ¶ 4n.) "As a result of Price's 'counsel', Plaintiff told Smith, DeWitt, Harlan, Searcey, Meints, and Lamkin that he 'remembered' pieces of the Wilson homicide, mostly in dreams." (*Id.*, p. 9, ¶ 4n.) "Pursuant to the plea agreement, Smith reduced the murder charge against Plaintiff in exchange for his agreement to testify at White's trial consistent with the false narrative of the Wilson homicide constructed by Defendants." (*Id.*, p. 10, ¶ 4s.)

While Dean alleges that Smith supervised the initial investigation into the Wilson homicide, there is no allegation of unconstitutional conduct at that stage of the investigation. Dean states that he was not interviewed at that time, and further alleges that "[n]either the BPD, the GCSO, nor the NSP ever considered Plaintiff or his alleged 'accomplices' to be serious suspects during the 1985 phase of the Wilson homicide investigation." (Filing 1, p. 6, ¶ 3g.)

Dean states that his name "first surfaced to law enforcement authorities in a statement made by Clifford Shelden suggesting that Dean had been at the scene of the crime involving Helen Wilson and he had observed it." (*Id.*, p. 7, ¶ 4g.) There is no specific allegation that Clifford Shelden's statement was obtained by improper means. Dean also alleges that Debra Brown Sheldon stated on April 13, 1989, that she and three other persons, not including Dean, were involved in the murder, but that the next day she "changed her story and implicated Dean in the murder." (*Id.*, p. 7, ¶ 3h, i.) Again, there is no specific allegation that any improper means were used to obtain this false statement.[8]

---

[8] It is only alleged that the statement was untrustworthy because "Debra Brown Sheldon was known by defendants to be of low intelligence, with emotional problems dating from childhood" (filing 1, p. 7, ¶ 3h), and because while she claimed Dean was "attempting to look for money to take from Helen Wilson," defendants were aware that "there was over $1000.00 in cash in the apartment of Helen Wilson, which was easy to find and was never taken." (*Id.*, p. 8, ¶ 3i.)

Dean claims that Smith and Deputy Searcey were responsible for his arrest on April 15, 1989, but a prosecutor enjoys absolute immunity for conduct in the preparation and filing a motion for an arrest warrant unless he acts as a witness. *See Kalina v. Fletcher*, 522 U.S. 118 (1997). Dean alleges that his arrest warrant was issued "on the basis of an affidavit by Defendant Searcey" alone. (Filing 1, p. 8, ¶ 4j.)) Dean also states that he "denied all involvement with Wilson's murder" during the post-arrest interview that Searcey allegedly conducted at Smith's direction on April 16, 1989. (*Id.*, p. 8, ¶ 4l.)

Dean alleges that during the polygraph examination conducted at Smith's request, the examiner "pressured [him] to consider 'leveling' with his attorney and pleading to a lesser charge rather than face conviction for first-degree murder and execution in the electric chair." (*Id.*, p. 8, ¶ 4m.) Dean also contends that as a result of his meeting with Price, which Smith arranged, false memories were implanted. Dean states that "[a]t the time of his arrest, he was diagnosed as low range to borderline range of intellectual function; mixed personality disorder with dependent and antisocial features and 'psychogenic amnesia in remission'; and adjustment disorder with depressed mood, resolved and suicidal tendencies." (*Id.*, p. 6, ¶ 4b.) Dean alleges that Price, while pretending to be his therapist, "counseled Plaintiff that if he relaxed and tried to picture Wilson's apartment, his memory of the Wilson murder would return to him. Price showed plaintiff a videotape of the crime scene showing Helen Wilson, which had a profound effect on him. . . . Plaintiff eventually began to recite a story similar to the false narrative of the Wilson homicide first proposed by Clifford Sheldon, and later adopted by Debra Brown Shelden and the others." (*Id.*, p. 9, ¶ 4n.) Because the date when formal charges were filed against Dean is not alleged in the complaint, it cannot be determined whether he is entitled to absolute immunity in connection with the polygraph examination or the meeting with Price.

It is clear, however, that Smith's decisions to file charges against Dean, and later to reduce the charges in exchange for Dean's cooperation, were both intimately

15

associated with the judicial phase of the criminal process.  *See Williams v. Hartje*, 827 F.2d 1203, 1209 (8th Cir. 1987) (decision of  prosecutor to file criminal charges is within the set of core functions which is protected by absolute immunity; this is so even if the prosecutor makes that decision in consciously malicious manner, or vindictively, or without adequate investigation, or in excess of his jurisdiction); *Myers v. Morris*, 810 F.2d 1437, 1446 (8th Cir. 1987) (prosecutor's activities in plea bargaining context warrant absolute immunity), *overruled on other grounds by Burns v. Reed*, 500 U.S. 478 (1991).

### E.  Sheriff DeWitt

Dean alleges that "[a]t all relevant times herein, DeWitt was the direct supervisor of Searcey, Lamkin, Meints, and Harlan." (Filing 1, p.3, ¶ 1g.) "To hold a supervisor liable under § 1983, a plaintiff must allege and show that the supervisor personally participated in or had direct responsibility for the alleged violations." *McDowell v. Jones*, 990 F.2d 433, 435 (8th Cir. 1993) (citing *Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir.1985)).   "Or a plaintiff could show that the supervisor actually knew of, and was deliberately indifferent to or tacitly authorized, the unconstitutional acts."   *Id.* (citing *Pool v. Missouri Dept. of Corr. & Human Resources*, 883 F.2d 640, 645 (8th Cir.1989)).

Dean alleges that DeWitt and Smith arranged for his meeting with Price. Although Price is not listed as one of the persons whom DeWitt supervised, he is alleged to be a Gage County Deputy Sheriff.  (Filing 1, p. 3, ¶ 1h.)  Because DeWitt is alleged to have initiated Price's "counseling" of Dean, he will not be dismissed from the action.

### F.  Malicious Prosecution

Dean's complaint contains several references to "malicious prosecution". (Filing 1, p. 2; p. 13; p. 14, ¶ 12; p. 15, ¶¶ 14, 15.)  "[M]alicious prosecution by itself

is not punishable under § 1983 because it does not allege a constitutional injury." *Kurtz v. City of Shrewsbury*, 245 F.3d 753, 758 (8th Cir. 2001). "[M]alicious prosecution can form the basis of a § 1983 suit only if defendant's conduct also infringes some provision of the Constitution or federal law." *Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 977 (8th Cir. 1993). However, "[r]ead liberally, [Dean's] malicious prosecution claim may be taken to argue a procedural due process violation." *Gunderson v. Schlueter*, 904 F.2d 407, 409 (8th Cir. 1990). That is, Dean alleges that the defendants' "malicious prosecution [led] to wrongful conviction" and "deprived Plaintiff of his liberty without due process of law in violation of the Fifth and Fourteenth Amendments to the Federal Constitution." (Filing 1, pp. 13, 14.)

### G.  Other Individual Defendants

The defendant deputy sheriffs contend that the facts alleged in the complaint are insufficient to show their participation in the alleged constitutional violations. After carefully reviewing the allegations made against each defendant,[9] I disagree.

### 1.  Deputy Price

It is alleged that Price pretended to be Dean's therapist and counseled that he was repressing memories of the murder. It is also alleged that "Price, Searcey, and/or other defendants informed Plaintiff that if he did not cooperate and plead guilty to a lesser offense than first degree murder, he would be prosecuted for first degree murder and could be sentenced to execution." (*Id.*, p. 9, ¶ 4o.) I find that a Fifth Amendment claim is sufficiently alleged against Price since "agents of the State may not produce

---

[9] While there is no longer a heightened pleading requirement in §1983 suits against individual defendants, *see Doe v. Cassel*, 403 F.3d 986, 989 (8th Cir. 2005), "the complaint must include sufficient factual allegations to provide the grounds on which the claim rests." *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009).

a plea . . . by mental coercion overbearing the will of the defendant." *Brady v. United States*, 397 U.S. 742, 750 (1970).[10]

### 2. Deputy Searcey

It is sufficiently alleged that Searcey procured Dean's arrest by submitting a false affidavit, but, as previously discussed, this Fourth Amendment claim is barred by the statute of limitations. His other alleged involvement in the case consists of interviewing Debra Brown Sheldon (filing 1 p. 7, ¶ 4h), conducting a post-arrest interview with Dean (*id.*, p. 8, ¶ 4l), being told by Dean that he remembered pieces of the murder after being counseled by Price (*id.*, p. 9, ¶ 4n), and telling Dean that he would be prosecuted for first degree murder and possibly executed if he did not cooperate (*id.*, p. 9, ¶ 4o). There are sufficient allegations of fact to show Searcey's involvement in the alleged violation of Dean's Fifth Amendment rights.

### 3. Deputy Lamkin

It is alleged that Lamkin participated in interviewing Debra Brown Sheldon (*id.*, p. 7, ¶ 4h), and was one of the persons who was told by Dean about his remembering pieces of the Wilson homicide (*id.*, p. 9, ¶ 4n). I find that sufficient facts are alleged to show Lamkin's involvement in the alleged Fifth Amendment violations.

### 4. Deputy Harlan

---

[10] "A truthful and noncoercive statement of the possible penalties which an accused faces may be given to the accused without overbearing one's free will." *Simmons v. Bowersox*, 235 F.3d 1124, 1133 (8th Cir. 2001). Here, however, Dean alleges that he was mentally impaired, and the threat of execution was only part of the psychological pressure that allegedly was exerted on him by the defendants.

18

It is only alleged that Harlan was told by Dean that he remembered pieces of the Wilson homicide. (*Id.*) Even though his alleged involvement was slight, Harlan will not be dismissed from the action.

### 5. *Deputy Meints*

As with Harlan, even though it is only alleged that Meints was told by Dean that he remembered pieces of the Wilson homicide (*id.*), he will not be dismissed from the action.

### H. *State-Law Tort Claims*

Finally, the defendants argue that any state-law tort claim alleged in the complaint is subject to dismissal as a matter of law. In response, Dean states that even though the complaint requests the court to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a), he "has not yet alleged any state cause of action against Defendants, including those based on the intentional torts of false arrest, false imprisonment, malicious prosecution or abuse of process." (Filing 28, p. 24.) Any state-law tort claims alleged in the complaint therefore will be deemed to have been withdrawn by the plaintiff and will be dismissed without prejudice.

### III. CONCLUSION

The plaintiff's claim that he was unlawfully seized is barred by the statute of limitations. Any claim that the plaintiff incriminated himself as a result of unlawful coercion is also barred by the statute of limitations. However, the plaintiff's claims that his plea was involuntary, and that he was denied due process because of false evidence, did not accrue until the plaintiff was pardoned, and are not time-barred.

The plaintiff has sufficiently alleged that Gage County had in effect certain unconstitutional policies or customs. The Gage County Attorney's Office and the Gage County Sheriff's Office are not suable entities.

The facts alleged regarding County Attorney Smith are sufficient to overcome a motion to dismiss with regard to absolute prosecutorial immunity because they can be fairly read to suggest that Smith acted as something other than a prosecutor during some stages of the criminal investigation. Therefore, the motion to dismiss will be denied as to Smith on the question of absolute prosecutorial immunity, but without prejudice to reevaluation upon a properly supported motion for summary judgment. The allegations made against Sheriff DeWitt and his deputies are also sufficient to survive a motion to dismiss.

Finally, to extent that any state-law tort claims are alleged in the complaint, they will be dismissed without prejudice.

Accordingly,

IT IS ORDERED that the defendants' motion to dismiss (filing 21) is granted in part and denied in part, as follows:

1.    The plaintiff's claim that the defendants violated his rights under the Fourth and Fourteenth Amendments is dismissed with prejudice, as barred by the statute of limitations.

2.    The plaintiff's claim that the defendants violated his rights under the Fifth and Fourteenth Amendments is dismissed with prejudice, as barred by the statute of limitations, but only to the limited extent that the plaintiff alleges his confession was coerced. This dismissal does not affect the plaintiff's allegations that his guilty plea was involuntary or that the defendants manufactured evidence against him.

20

3.     The Gage County Sheriff's Office and the Gage County Attorney's Office are dismissed from the action as non-suable entities.

4.     To the extent that the complaint alleges any state-law claims for false arrest, false imprisonment, malicious prosecution, or other torts, those claims are dismissed without prejudice.

5.     In all other respects, the defendants' motion to dismiss is denied.

November 25, 2009.                    BY THE COURT:

                                      *Richard G. Kopf*
                                      United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.