# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JAMES L. DEAN,<br>      Plaintiff,<br>v.<br>COUNTY OF GAGE, NEBRASKA, et al.,<br>      Defendants. | 4:09CV3144 |
| LOIS P. WHITE, as Personal Representative of the Estate of Joseph White, deceased,<br>      Plaintiff,<br>v.<br>COUNTY OF GAGE, NEBRASKA, et al.,<br>      Defendants. | 4:09CV3145 |
| KATHLEEN A. GONZALEZ,<br>      Plaintiff,<br>v.<br>COUNTY OF GAGE, NEBRASKA, et al.,<br>      Defendants. | 4:09CV3146 |
| THOMAS W. WINSLOW,<br>      Plaintiff,<br>v.<br>COUNTY OF GAGE, NEBRASKA, et al.,<br>      Defendants. | 4:09CV3147 |
| ADA JOANN TAYLOR,<br>      Plaintiff,<br>v.<br>COUNTY OF GAGE, NEBRASKA, et al.,<br>      Defendants. | 4:09CV3148 |
| DEBRA SHELDEN,<br>      Plaintiff,<br>v.<br>COUNTY OF GAGE, NEBRASKA, et al.,<br>      Defendants. | 4:11CV3099 |

**MEMORANDUM AND ORDER**

I have carefully reviewed the defendants' motion for judgment as a matter of law or for new trial (filing no. 585) and the briefs related thereto. The motion will be denied for the reasons articulated in the excellent 94-page brief in opposition. I add only these six highlights:

1. The defendants may not like the rulings of the Court of Appeals, but the Court of Appeals has made it abundantly clear that the evidence was plainly sufficient to go to the jury against all defendants on all claims. After hearing the evidence in the second trial, that is also my conclusion.

2. There is no inconsistency in the verdict as between DeWitt and Gage County. DeWitt may not have been held personally liable, but that hardly saves the County. A reasonable jury could easily conclude that DeWitt authorized, indeed encouraged, his subordinates to engage in violations of the plaintiffs' civil rights. One example, out of many, is illustrative. DeWitt essentially got rid of a Beatrice City police officer who was helping with the investigation because the police officer was not shy about expressing his opinion that the Sheriff's office had the wrong people. A reasonable jury could have believed that such conduct sent an unmistakable message that come hell or high water the deputies were to get convictions of the "Beatrice Six."

3. Ms. Chaloupka's actions during closing argument could not and did not harm the defense. Indeed, I made that observation at the time. Furthermore, her client received the least amount of money awarded by the jury to any plaintiff. Besides, if the defense thought her conduct was prejudicial they could have made a motion for mistrial or asked for some specific cautionary instruction to the jury. They did not. Indeed, they declined the plaintiffs' offer for one curative instruction regarding Ms. Chaloupka's request that counsel, the plaintiffs and their supporters stand up.

4. My alleged "judicial misconduct"—comments I made off the record and outside the presence of the jury at the end of a trial day—did not constitute misconduct at all. In fact, the defense cites not one case to support their assertion.

Besides, there is not the slightest bit of credible evidence that my remarks harmed the defense (or the plaintiffs) in any way. I note with some irony that the defense never objected to my off-the-record discussions they now complain about just like they never objected to any of the myriad of other off-the-record discussions at the end of various trial days about such things as jury instructions or my repeated expressions of concern for the health of Mr. O'Brien, one of defendants' lawyers. It is worth noting also that every day before I brought the jury into the courtroom (at the beginning of the day and after every recess) and every day after the jury left (at recesses and at the end of the day) I gave counsel an opportunity to put anything they wanted on the record outside the presence of the jury. The complaint the defense makes now was never raised. Finally, the jury was instructed not to read anything in the press and there is zero evidence that the jury violated this injunction. More specifically, Exhibit 4 to the defendants' motion for new trial is entirely lacking in foundation that the comment by a reader in the newspaper has anything whatsoever to do with a juror or anything whatsoever to do with the substance of my alleged misconduct or press coverage of it.

5. There is no basis to reduce the award to Winslow. Despite the fact that he was serving a sentence for another crime when he was convicted of the killing which is the subject of this case, the jury could have reasonably believed, as Winslow testified, that his life became an absolute living hell after his highly publicized conviction involving the anal rape and killing of an elderly woman. My only semi-surprise is that Winslow was not awarded more money by the jury.

6. It is, to put it bluntly, laughable to suggest that the jury verdict was excessive. Indeed, in a similar "false confession" case the City of New York agreed to pay roughly $41 million to the "Central Park Five" in 2014 to settle the case. See *In re McRay, Richardson, Santana, Wise and Salaam Litigation*, No. 1:03-cv-09685 (S.D. N.Y. 2014) ([Doc #313](Doc #313)).

Accordingly,

IT IS ORDERED that the defendants' motion for judgment as a matter of law or for new trial (filing no. 585) is denied.

September 6, 2016.	BY THE COURT:

	s/ *Richard G. Kopf*
	Senior United States District Judge